May it please the court, my name is Doug Newborn, law student at the University of Arizona, supervised by Dean Jordan Curtis. I would like to reserve two minutes for rebuttal. You may do so, counsel. Just watch the clock. Thank you. Through the law school's pro bono appellate project, we were appointed by this court as amicus counsel on behalf of Ms. Min Liu, a 51-year-old Chinese immigrant who has resided in the United States for the past seven years without her husband or her only child. As part of the order appointing us as amicus counsel, we were ordered to supply a supplemental brief, provide a reply brief, and to appear at oral argument with Ms. Liu's original counsel. However, recently this court accepted Ms. Liu's original counsel's motion to withdraw, leaving us as the only party on behalf of Ms. Liu. Very well. Ms. Liu stated before the immigration judge that she was introduced to Christianity in June of 2002 and went to her first house church meeting and Christmas of that same year. She was baptized on May 4th, where if I can mention my favorite instance of the language barrier in this case, she described the applause as the people started to give big hands. After she was baptized, she started hosting her own home church meetings in secret. Then in July of 2004, at 2 o'clock in the afternoon, her life changed forever. Three Chinese officials came to her house, ransacked her house, took her Bible, and took her to a local detention facility. Over the course of the next five days, they hit her, they kicked her, they hit her also with an electric baton in an effort to force her to disavow her Christian beliefs. Now, counsel, we're aware of that recital of her interpretation of the facts, but we have a credibility issue that's been raised. Do we not, by the immigration judge? Yes, the immigration judge. Why don't you get to that issue, because that's the first legal issue in the case, as I see it, although I'm always interested in your view. Yes, Your Honor. The REAL ID Act sets a credibility determination standard, not an infallibility determination standard, and it does this in one of two ways. So what's the standard? The standard is it raises the bar on the immigrant by getting rid of what the circuit used to adopt as the heart of the matter test, and now it encompasses a totality of the circumstances test. So we don't look at whether the issue on which we base credibility is the heart of the matter. We just say, under the totality of the circumstances, does it have a problem? Correct, Your Honor. Is that what you're saying? Yes. So we had two things that were, what do we have as the standard on failure to corroborate? As the immigration... One is the first, whether there was a use of the wrong pronoun and whether that really made a difference in this particular matter, but the second is there was no corroboration when she was asked by the IJ to bring some. Correct. To handle the medical records first, as the Second Circuit said in Zuvi Board of Immigration Appeals, for notice to be meaningful in the immigration context, especially where language barriers are present, an immigration judge must unambiguously communicate with reasonable specificity or corroborative evidence desire. And I understand what that is, but what's the BIA standard? What do they suggest is the standard in determining how they would look at what the IJ did? What kind of evidence is necessary for them to sustain what the IJ did? Well, we follow the substantial evidence. And then if the BIA agrees with the IJ, what is my standard of review as relates to my review of the BIA decision? It's with being mindful of the fact that... What's the standard? The standard is... Substantial evidence, isn't it? Yes. Is there substantial evidence to sustain the decision? So one could even say, I might even disagree with the BIA. I might even disagree with the IJ, but that's not enough, is it? I have to have no... well, substantial evidence equals, frankly, no evidence to sustain what they did. Isn't it even more difficult? Because the evidence has to be such as to compel us to reverse. And what here would compel us to reverse? She was given notice August 29, 2007. We need your records. She was given notice again on November 1, 2007 to get her records. And each time she failed to produce them. Wasn't that adequate notice? Yes, it was. However, this is attributable to a simple misunderstanding. And the immigration judge herself noted this misunderstanding. On page 144 of the record, when the immigration judge is asking again for these records, Ms. Liu starts to go down the road where Ms. Liu's understanding is that a medical receipt. Like, I'm giving you proof that I was at this hospital separate from these medical records. And then the immigration judge realizes this receipt slash record discrepancy. And she states, I'm not asking for a receipt. I'm asking for medical records. And then Ms. Liu says, okay, I didn't realize substantially. I didn't realize you wanted medical records. I can get those. I just need time. And what did the judge say? The judge then gave the oral decision that day and used that as one of the reasons for an adverse credibility determination. So the judge really didn't say the excuse you're giving me is a good excuse. The judge says, based on the record and what I have in front of me, I can't give that very much credence. I have to decide today. And I think you had notice and you had the chance to produce the records. And you might say in your own way why you don't think you ought to produce, but that's not enough. Now I have to say on appeal, you're out to lunch, judge. Can I say on appeal, just reading this record, you're out to lunch. Well, if you look at the ‑‑ we detail this very specifically in our first supplemental brief. Well, I know you detail it, but I'm just trying to have you concentrate. Even in your detail, I worry that you didn't apply the standard of review. The standard of review says I have to give every benefit of the doubt to whatever evidence is in the record to the contrary and see if that is not substantial evidence, not just present all the other evidence I would present to the jury if I were going to make that determination. Yes, Your Honor. But by looking at the record, the misunderstanding is very reasonable and compels a different result than the immigration judge, at least as to the medical records. So the medical records are a complete misunderstanding. And when you look at the record evidence of the testimony and trial, you can see that laid out and how it develops. Even worse, you think that's even more compelling than the first? You think that there is substantial evidence to support the IJ's decision on the pronoun mix-up between an application and oral testimony? That's a better argument for the government than this? I see that I'm at two minutes. If I can quickly answer your question. Sure. The medical records is the easier issue to resolve in terms of the compelling standard. The gender issue, however, is it was just a simple mistake. And then that simple mistake, in light of the totality of the circumstances, especially given the specific detail of her testimony everywhere else, should not be under the Real ID Act something that you can base an adverse credibility determination on. Thank you, Counsel. You can reserve the remainder of your time. Thank you. We'll hear from the government. Good morning. May it please the Court, Kelly Walls for the Attorney General. In Shrestha, this Court found that a healthy measure of deference is owed to the agency's adverse credibility determination. And in Jibril, stated that after the Real ID Act, reversal of an adverse credibility finding will be justified only in the most extraordinary of circumstances. Counsel, may I just interrupt here? One of the things that bothers me in this case is that when orally spoken in Chinese, he and she sound exactly alike. And the government was saying, well, that shows she wasn't telling the truth. She said one when she meant the other. What is your response to that? Okay. In Shrestha, this Court counseled that we need to look at the individual circumstances of any given case in order to determine under the totality of the circumstances whether any given inconsistency is a material I'm sorry, is one that has a legitimacy in questioning credibility. The specific circumstances in this case are that Ms. Liu is a university-educated woman, who she herself was aware of the grammatical rule in this case. In fact, she's the one who explained to her attorney that when spoken, this specific pronoun can be used to refer to both he and she, but when written, takes on the masculine form. Was that in the record? Yes. Her attorney actually explained that they were dropping their objection to the translation because his client, Ms. Liu, explained to him that the translation was correct and that she erred in her writing. So what we need to, under Ms. Liu's explanation, this woman who earned her university degree just six years before she wrote her statement, wrote the wrong gender pronoun three separate times in her affidavit. So the government's position is that a gender pronoun is not that difficult of a concept for a university-educated person to understand, and that on three separate occasions in her statement, she incorrectly wrote the pronoun. To buy into Ms. Liu's explanation, you would have to find that the record compels her explanation that she's simply careless, rather than find that... What's our standard of review, Counselor? Your standard is substantial evidence, so you would have to find that the record compels the conclusion that the immigration judge erred in finding that her explanation was unpersuasive. Well, let me ask you another question. There are cases, are there not, which suggest that those are not really the type of, if you will, disagreement that we should get too worried about, like dates. Well, and I would say this is... I mean, I guess we have quite a few cases, even under the new Act, that would suggest that we shouldn't be too worried about whether dates are exactly the same, that even though it doesn't need to go to the heart of the matter, there are circumstances when the difficulty or the incongruity is not as important as it might be, and dates are them. I guess my question to you is, why is he or she such an important difference? In Wren, for example, that was a post-Real ID Act case where the court did say dates can be a question of fallibility of human memory, and that is something that we can understand, and we shouldn't hold a person to remembering a specific date that an incident occurred on. My point is simply that we're talking about something that I think is familiar to all of us, the ability to write properly in our own native language. I would suggest that I would not find it likely that any of us would err in writing a gender pronoun when writing about a person that we know, our supervisor at work. But does it really matter whether the supervisor at work was a male or a female when the total object of the story is they're the person who turned her in to the government? No, and that's exactly what this court explained in Shrestha, is that the minor inconsistency does not have to be material. In fact, in quoting the Supreme Court in FCC v. W.O.K.O., that court found that the fact of concealment may be more significant than the fact concealed. The willingness to deceive a regulatory body may be disclosed by immaterial and useless deception, as well as by material persuasive ones. So in this case, the fact that the gender of the supervisor is immaterial doesn't mean that the story itself is not fabricated. In fact, the supervisor allegedly telling the police was the triggering event for the entire arrest, detention, and flight from China. So the fact that she, Ms. Liu, erred or somehow was inconsistent at the beginning of her story does tend to suggest that this whole story might have been fabricated. From the government's point of view, it was that she could remember the nuts and bolts of her persecution story, but forgot the details of the beginning. That's what the inconsistency could suggest. I guess my worry about that is, again, if dates are not that important in determining these particular situations, the government could argue to me that if she can't remember the date this happened, but she can remember everything else, there's no way you can say that that's not important. And yet we have a case dead on that says that's not important. Now the government's arguing the gender of the person doing it is quite important. She should have remembered that, even though she remembered all the other circumstances. And frankly, that means there's substantial evidence to sustain what the IJ did. It seems to me that you're making a contrary argument. I'm not actually arguing the gender itself is important. My argument is that she hand wrote a statement in which she made three errors and she had at least two occasions to review this statement, once before the asylum officer and once before the immigration judge. But she didn't catch these three errors on a grammatical rule that she herself knew, which caused the immigration judge to question, at the time she wrote it, was that in fact, quote unquote, an error in her mind? Or was it that when she got on the stand, she couldn't remember the gender of her supervisor because that detail of her story slipped her mind. So she picked one and she picked wrong. Counsel, was this the only basis upon which the adverse credibility determination was made? No, I would say that in addition to the inconsistency regarding the gender, there were inconsistencies when questioned about the corroborating evidence, so separate from the lack of corroboration itself. When asked about the lack of medical records, despite having been asked for a production of them, Ms. Liu first stated that she needed $10 to pay the clinic in order to get a receipt, and she didn't have that. When the immigration judge explained that's not what he wanted, then Ms. Liu said, I would be able to supply those, however, they're not ready to be sent yet. And then the immigration judge asked why not. She said, nobody asked me for that medical history. So she was asked on the record previously, so that seemed inconsistent and just sort of confusing to the immigration judge. She didn't buy her story when pushed. She did a similar thing when asked about the bail receipt, first saying that she didn't dare ask for a bail receipt, and then immediately afterwards stating that she didn't know whether her husband had received a bail receipt. So the immigration judge said, either you were afraid to ask for a bail receipt or you knew you didn't have a bail receipt, but it can't be both. So it was more a sense of when pushed on details of her story that she couldn't respond in a consistent manner. So there were those three inconsistencies, the gender and the two explanations for the lack of corroboration, plus the lack of corroboration itself. Is there anything in the record that shows she has a criminal background of any kind? If you exclude the arrest for the religious reasons, that's the only indication of an arrest. Has she committed a crime here? No, there isn't in the record. Given that, and given what we understand to be the government's new position, have you thought about mediating this case? Ms. Liu does not qualify under any of the prosecutorial discretion guidelines that ICE has set forward, and we have thoroughly reviewed all of our cases at this point, and she does not appear to fall within that. So at this point, given that she does not have any other avenues of relief, she does not look like a candidate for prosecutorial discretion. Well, we have a number of similar cases at recent times where the panel has ordered it to be sent back for consideration for mediation, especially where there's no criminal record involved. And, of course, the court could do that. I'm just saying that I have thoroughly considered the prosecutorial discretion program, and it does not appear that she's a candidate. If you wish to send it to mediation, of course the court has that ability to do so. I don't believe it's going to be conductive. Not everybody in the court agrees with that. Okay. I was going to say, not everybody agrees with the idea, so I'm not sure we're ready. Okay. I guess that's why I asked you. Yeah. No, I thoroughly considered it. I brought a list of the priorities with me, and she does not meet them. I am accepting for the record that you are representing that the Department of Justice has examined this case with respect to its own existing guidelines and has determined that this case does not qualify. Yes, I have thoroughly considered all of them. I do not believe that she falls within them. And at this point, I cannot recommend that it be referred to mediation for that basis. But, of course, the court, I cannot instruct the court one way or the other on that. But I do not believe it would be productive to do so. I see my time is almost up, but if I could briefly. Your time has expired. Okay. I have 24 seconds on this. Is there any questions on corroboration that I. . . You went over time by 20. Oh, I went over. Sorry. Now 31, 32. Let's go the other way. I know you spent a lot of time asking opposing counsel about corroboration. Your time has expired. Okay. Thank you. And you go into red, and the clock keeps going. Oh, now it's red. It didn't light up before. When you go into red, that's deficit spending. Counsel, you have some reserve time. Thank you. This court has said and read that the consistency of the applicant's statements with reports of the Department of State on country conditions is among the relevant factors that the IJ must consider. The BIA never even mentioned the Department of State records. And when you look at the Department of State records, they almost detail by detail completely corroborate all of Mislieu's testimony. This court has also said in Shrestha that a totality of the circumstances approach also imposes the requirement that an immigration judge not cherry pick solely facts favoring an adverse credibility determination while ignoring facts that undermine that result. And we argue that this is precisely what happened here. Now the REAL ID Act demands credibility, not infallibility. And a review of the record shows that Mislieu's testimony was given with amazing detail. She had the day of the week, the date, the weather, and the time of her initial detention by Chinese officials. These could all have been verified, and the government decided not to do so. She had the layout and the location of the detention facility also verifiable. Also, the government decided not to verify it. She had the names of the couple that introduced her to Christianity, the person who hosted the first home church meeting, the name of the person who baptized her, the name of her current pastor, the name of the officers that tortured her. These could have all been verified. The government chose not to do that. However, the instant they realized that... Just a minute. The government chose not to do that. We had a hearing. The IJ had a chance to think about all this. We're concentrating on whether she can be determined to be not able to tell the truth that her story was not right based on what the IJ did. That's why we took you to standard of review in the first place. All of the things you're saying the government chose not to do, she had counsel at the hearing. She could have presented what she needed to do. We're only concentrating on what the IJ did and why, and we're trying to apply the standard of review. So, again, these facts are not important. They're all facts for a jury. Well, let's concentrate on exactly what it is that the IJ did and why and whether it meets the standard. That's the question, isn't it? Yes, Your Honor. I see my time is up. If I could just quickly conclude. Please do. Okay. Again, the Real ID Act sets a totality of circumstances test. The medical records was a misunderstanding easily seen on page 144, even by the immigration judge. The bond receipt is a language barrier issue. The bottom line is she didn't have it and she didn't ask for it. She didn't have it. They weren't issued one. Other than that, the gender issue, so now it only leaves the gender issue. It's a simple mistake. That alone cannot, within the totality of the circumstances, form a basis for an adverse credibility determination. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision. But while counsel are still in the room, on behalf of the panel, I would like to express our appreciation to the University of Arizona Law School and to the articulate representation that we heard today by one of your law students. Thank you very much. Thank you. The case next to be argued is Headley v. Church of Scientology.
judges: Nelson, O'scannlain, Smith